# Exhibit G

DEPOSITION OF OFFICER MAURICE SCOTT
CONDUCTED ON WEDNESDAY, JANUARY 17, 2007
Case 1:06-cv-00331-RCL   Document 48-3   Filed 12/05/2007   Page 2 of 3
Page 2 of 3

1 (Pages 1 to 4)

**Page 1**

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLUMBIA
2
3    - - - - - - - - - - - - - - -+

4    MONIQUE DINGLE.          |

5        Plaintiff.    | Civil Action Nos.
                       |    06-00950
6    vs.               |    06-00331

7    DISTRICT OF COLUMBIA, et al. |

8        Defendants.   |

9    - - - - - - - - - - - - - - -+

10   MONIQUE DINGLE.          |

11       Plaintiff,   |

12   vs.               |

13   MAURICE SCOTT, et al,    |

14       Defendants.   |
                        |
15   - - - - - - - - - - - - - - - - -x
16       Deposition of Officer Maurice Scott.
17       Washington, D.C.
18       January 17th, 2007
19       11:25 a.m.
20   Job No. 1-94799
21   Pages 1 - 40
22   Reported by: Laurie Bangart-Smith

**Page 2**

1            Deposition of
2        OFFICER MAURICE SCOTT
3
4    Held at the offices of:
5        OFFICE OF ATTORNEY GENERAL
6        441 Fourth Street, N.W., 6th Floor
7        Washington, D.C. 20001
8        (202)727-3500
9
10
11
12
13
14
15
16
17       Taken pursuant to notice, before Laurie
18   Bangart-Smith, Registered Professional Reporter,
19   Certified Realtime Reporter, and Notary public in and
20   for the District of Columbia.
21
22

**Page 3**

1            A P P E A R A N C E S
2
3    ON BEHALF OF THE PLAINTIFF:
4        PAUL CORNONI, ESQUIRE
5        REGAN, ZAMBRI & LONG, PLLC
6        1919 M Street, N.W.
7        Suite 350
8        Washington, D.C. 20001
9        (202)463-3030
10
11   ON BEHALF OF THE DEFENDANTS:
12       JAMES H. VRICOS, ESQUIRE
13       ASSISTANT ATTORNEY GENERAL
14       Government of the District of Columbia
15       441 Fourth Street, N.W.
16       Washington, D.C. 20001
17
18
19
20
21
22

ORIGINAL

**Page 4**

1            EXAMINATION INDEX
2                  PAGE
3    EXAMINATION BY MR. CORNONI . . . . . . . . . . .  5
4
5
6
7
8            E X H I B I T S
9              (NONE)
10
11
12
13
14
15
16
17
18
19
20
21
22

**9**

1    A    In the Station.
2    Q    Was it later on in your shift or was it
3  earlier in your shift?
4    A    It might have been later on.
5    Q    Okay.  What happened first?
6    A    What I recall is that the plaintiff and the
7  mother came to the Station requesting a court date in
8  reference to a 61D.  I advised someone in the Station
9  on the procedure of that.
10    Q    You advised someone in the Station what?
11    A    What was the procedure for a 61D.
12    Q    Who did you advise?
13    A    I don't remember who I advised that day, but
14  I know talking to Officer Anderson, he works the cell
15  block, in reference to the protocol of the 61D.
16    Q    Okay.  You didn't advise Officer Anderson?
17    A    I did advise Officer Anderson what's the
18  protocol of 61D.
19    Q    Okay.  So you explained to Officer Anderson
20  what the protocol was for a 61D?
21    A    Yes.
22    Q    Okay.  So when Ms. Dingle and her mother

**10**

1  came into the Station, did you see them actually enter
2  the Station?
3    A    I don't remember.
4    Q    What drew your attention to them?
5    A    Whoever comes to the Station, you know, and
6  comes to the counter, we have to -- you know, it's
7  like Customer Service.  You have to see what they
8  want.
9    Q    So they came to the counter, Ms. Dingle and
10  her mother.  Was anyone else with them?
11    A    Not that I remember.
12    Q    Were you the first officer to speak to
13  Ms. Dingle and her mother?
14    A    Yes.
15    Q    What did they say to you at that time?
16    A    They was wanting to request a hearing for a
17  court date in reference to a 61D.
18    Q    What did you say to them, if anything?
19    A    If I don't know the protocol, I will get
20  assistance from another officer who knows the protocol
21  of the 61D.
22    Q    And then did you go ask another officer what

**11**

1  the protocol was?
2    A    Yes.
3    Q    Who did you ask?
4    A    Officer Anderson.
5    Q    What did Officer Anderson tell you?
6    A    He advised me that the process of getting a
7  court date for a 61D is that the defendant has to
8  submit to an arrest in order to, you know, in order to
9  get a court date.
10    Q    Did he say anything else to you?
11    A    I believe that's how it was phrased, "submit
12  to an arrest in order to get a court date."
13    Q    And so no, he didn't say anything else to
14  you that you recall?
15    A    That I recall, no.
16    Q    Okay.  What did you do after getting that,
17  being advised that by Officer Anderson?
18    A    I advised the defendant or the plaintiff in
19  this matter the same thing he advised me.
20    Q    So you told Ms. Dingle that she needed to --
21  in order to request a trial, she needed to be
22  arrested?

**12**

1    A    Yes.
2    Q    And what did Ms. Dingle or her mother say at
3  that point?
4    A    I believe at that point she was advising me
5  that in order to receive a court date you don't have
6  to pay the fine, or something to that matter, in order
7  to receive a court date.
8    Q    Okay.  Who said that to you?
9    A    I believe the mother said that to me.
10    Q    Did Ms. Dingle say anything to you at this
11  point?
12    A    Not that I know of.
13    Q    After Ms. Dingle's mother said that to you,
14  what happened next?
15    A    I don't know who I advised next after that,
16  but I remember getting Sergeant Emerman in reference
17  to this matter.
18    Q    Did you do anything else to Ms. Dingle or
19  her mother, either advise them or do anything, prior
20  to getting Sergeant Emerman?
21    A    No.
22    Q    And so did you go get Sergeant Emerman?