# Exhibit I

DEPOSITION OF SEAN MOORE
Case 1:06-cv-00331-RCL Document 48-10 Filed 12/05/2007 Page 2 of 3
CONDUCTED ON TUESDAY, JANUARY 9, 2007

1 (Pages 1 to 4)

**Page 1**

```
 1        UNITED STATES DISTRICT COURT
 2        FOR THE DISTRICT OF COLUMBIA
 3   - - - - - - - - - - - - - - - x
 4   MONIQUE DINGLE,          :
                              :
 5        Plaintiff   : CA No. 1:06CV00331
                              :
 6        V.          : Judge Lamberth
                              :
 7   DISTRICT OF COLUMBIA, et al., :
                              :
 8        Defendants  :
                              :
 9   - - - - - - - - - - - - - - - x
10
11        Deposition of SEAN MOORE
12            Washington, D.C.
13         Tuesday, January 9, 2007
14              10:36 a.m.
15
16
17
18   Job No.: 1-93460
19   Pages 1 - 48
20   Reported by: Jane L. Vaughan
21
22
```

ORIGINAL

**Page 3**

```
 1            A P P E A R A N C E S
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4   PAUL CORNONI, ESQUIRE
 5   Regan, Zambri & Long, PLLC
 6   Suite 350
 7   1919 M Street, Northwest
 8   Washington, D.C.  20036
 9   202-463-3030
10
11   ON BEHALF OF THE DEFENDANTS:
12   JAMES VRICOS, ESQUIRE
13   Office of the Attorney General
14   Government of the District of Columbia
15   1 Judiciary Square
16   441 4th Street, Northwest
17   Suite 1060N.
18   Washington, D.C.  20001
19   202-727-3400
20
21
22
```

**Page 2**

```
 1        Deposition of SEAN MOORE, held at the
 2   law offices of:
 3
 4        Office of the Attorney General
 5        Sixth Floor
 6        441 4th Street, Northwest
 7        Washington, D.C.  20001
 8        202-727-3500
 9
10        Pursuant to notice, before Jane L.
11   Vaughan, Registered Professional Reporter and Notary
12   Public of the District of Columbia.
13
14
15
16
17
18
19
20
21
22
```

**Page 4**

```
 1            C O N T E N T S
 2   EXAMINATION OF SEAN MOORE          PAGE
 3   By Mr. Cornoni           5
 4   By Mr. Vricos            45
 5   By Mr. Cornoni           46
 6
 7        E X H I B I T S
 8        (None.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

DEPOSITION OF SEAN MOORE
Case 1:06-cv-00331-RCL    Document 48-10    Filed 12/05/2007    Page 3 of 3
CONDUCTED ON TUESDAY, JANUARY 9, 2007

5 (Pages 17 to 20)

---

**17**

1  Q. Less than that?
2  A. Yes.
3  Q. Okay. And then after some of the persons in
4  the south side sidewalk group I guess we will call
5  them started to leave what happened next?
6  A. There was maybe two to four individuals who
7  still refused to leave.
8  Q. Two to four, I'm sorry, is that what you
9  said?
10  A. Yes.
11  Q. Were those males or females?
12  A. Females.
13  Q. And then what did you do, if anything, at
14  that point?
15  A. I then once again advised them that they
16  needed to leave or they could possibly face being
17  placed under arrest.
18  Q. What happened next?
19  A. One specific individual who I later learned
20  the name of Monique Dingle received a phone call on
21  her phone. She then answered it. I then directed --
22  I looked at her and advised her that she needed to

**18**

1  disperse the area.
2  Q. Okay. And then what happened?
3  A. At that point she then started going off on
4  me, swearing, yelling, saying fuck this, we don't need
5  to go anywhere. She was very loud, many obscenities.
6  Q. At this point was your partner standing
7  close to the situation as well?
8  A. Yes, he was.
9  Q. Okay. And then what happened next?
10  A. I then advised Ms. Dingle that if she did
11  not cease being loud and boisterous that she could be
12  possibly placed under arrest for being -- for
13  disorderly conduct, loud and boisterous.
14  Q. Okay. And then what happened?
15  A. She continued with the language loud enough
16  for the young juveniles that were in the crowd to hear
17  and also form backup. I then noticed the crowd
18  starting to form back up again.
19  Q. And at that point did you do anything?
20  A. I looked over my shoulder, and as I noticed
21  the crowd forming up I feared for my safety and my
22  partner's safety. I then once again advised Ms.

**19**

1  Dingle that if she did not quiet down and disperse
2  that she could possibly be placed under arrest.
3  Q. At that point that you feared -- what was
4  the reason for you fearing for your safety and your
5  partner's safety?
6  A. Due to the fact that a large number of
7  people in the crowd, her screaming and yelling and the
8  crowd forming back up again, and the fact that it was
9  just me and my partner the only ones out there.
10  Q. Approximately how many people were in the
11  crowd at that point when it started to reform?
12  A. Less than 30.
13  Q. Less than 30?
14  A. Yes.
15  Q. Okay. More than 20?
16  A. I couldn't give you an exact number.
17  Q. Okay. More than 10?
18  A. Yes.
19  Q. What happened next?
20  A. Ms. Dingle continued with her verbal
21  obscenities. I then advised Ms. Dingle that she was
22  now placed under arrest for loud and boisterous

**20**

1  disorderly conduct.
2  Q. So you placed her under arrest for what?
3  I'm sorry. I didn't hear you.
4  A. Disorderly conduct, loud and boisterous.
5  Q. When you placed her under arrest what did
6  you do at that point? Did you place her in the
7  vehicle?
8  A. No, I did not.
9  Q. Did you handcuff her?
10  A. Yes, I did.
11  Q. Do you recall what Ms. Dingle looked like?
12  A. I recall she was short, light skinned
13  black.
14  Q. Any other characteristics of her hair or
15  anything?
16  A. I don't recall.
17  Q. Do you know what she was wearing?
18  A. I don't recall.
19  Q. You said she was short.
20  Approximately how tall do you think she was?
21  A. Five six, five five.
22  Q. Approximately how much did she weigh?