### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ──────────────────────── | ) | |
| **MONIQUE DINGLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0331 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| ***et al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ──────────────────────── ) | | |

| | | |
|---|---|---|
| ──────────────────────── | ) | |
| **MONIQUE DINGLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0950 (RCL)** |
| | ) | |
| **MAURICE SCOTT, *et al.*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ──────────────────────── ) | | |

### MEMORANDUM OPINION

Now before the court comes defendants District of Columbia, Sean Moore, Maurice

Scott, Stuart Emerman, Nancy Oliver, and David Anderson's Motion for Partial Summary

Judgment [44].  Upon consideration of the motion, plaintiff's opposition [48], the entire record

herein, and the applicable law, the Court will GRANT defendants' motion as to battery claims

stemming from the May 23, 2005 incident, constitutional false arrest claims against the District

of Columbia, and punitive damages claims against the District of Columbia and Officers Scott

1

and David Anderson and DENY defendants' motion as to all other claims.

## I.    **FACTUAL BACKGROUND**[1]

Plaintiff Monique Dingle filed suit in this Court on February 24, 2006 against defendants Sean Moore, Maurice Scott, Stuart Emerman, Nancy Oliver, Brian Anderson, David Anderson, James Anderson, and the District of Columbia.[2]  Plaintiff has voluntarily dismissed Brian and James Anderson, Oliver, and Emerman.[3]  Plaintiff alleges a number of claims arising from two separate incidents involving the District of Columbia Police.  Specifically, she alleges constitutional false arrest claims under 28 U.S.C. § 1983, common-law false arrest, assault and battery, and gross negligence.  Plaintiff further seeks an award of punitive damages.  In the motion currently before the Court, defendants have moved for summary judgment as to all claims except the assault and battery claims stemming from the May 8, 2005 arrest.

### A.    **The May 8, 2005 Incident**

At about 1:45 a.m. on May 8, 2005, plaintiff Monique Dingle and six female friends had left a party at an apartment and were standing outside of the building.  (Compl. ¶ 10.)  No more than fifteen people had congregated in the vicinity of the group.  (M. Dingle Dep. 38:8-9.)  Two police officers, including defendant Sean Moore, approached the group, told them the police had

---

[1]The parties offer differing factual accounts of the events giving rise to plaintiff's action. In accord with the standards of summary judgment, the Court presents the facts in the light most favorable to plaintiff.  *See* discussion *supra* Part II.A.

[2]Plaintiff initially filed two separate lawsuits, but they have since been consolidated into this single action.

[3]The dismissal of all claims against these defendants is memorialized in the order accompanying this memorandum opinion.

received a noise complaint, and instructed everyone to leave the area.  (*Id.* 42:11-13.)  As Officer

Moore was talking, plaintiff received a phone call, answered the call, and made brief eye contact

with the officer.  (*Id.* 42:15-21.)  Though the group of females had started walking away from the

scene (*see* Goodbee Statement), Officer Moore nevertheless felt that he had been disrespected by

plaintiff's answering of her phone (M. Dingle Dep. 43:19-44:7).  Seething, Officer Moore hurled

epithets at plaintiff and proceeded to push her on both of her shoulders.  (*Id.*)  Though plaintiff

did not make any attempts at resisting Officer Moore's show of force (*id.* 45:2-11), the officer

took her left arm, raised it behind her back, grabbed her neck, and slammed her onto the hood of

a nearby car (*id.* 44:14-16).  As plaintiff later testified, Officer Moore pounced on her almost

immediately after commanding the group to leave the area, not giving her sufficient time to

comply with his demands.  (*See id.* 54:22-55:2.)

Officer Moore then told plaintiff he was arresting her for resisting arrest, took all of her

belongings out of her pocket, and handcuffed her.  (*Id.* 58:19-59:5.)  Apparently, however, this

initial display of force had not been sufficiently cathartic, so Officer Moore proceeded to grab

plaintiff by her hair and slammed her face on the hood of the car.  (*Id.* 61:17-22.)  He then

searched her and shoved her into the back of the patrol car.  (*Id.* 62:21-65:13.)

After plaintiff had sat quietly for a while in the back of the patrol car, Officer Moore

removed her handcuffs.  (*Id.* 69:18-70:7.)  Officer Moore then released her, giving her a citation

and instructing her to pay the fine at the district police station.  (*Id.* 74:17-18.)  Upon exiting the

vehicle, plaintiff attempted to retrieve her belongings, but she was unable to locate her eight-

hundred-dollar dental retainer.  (*Id.* 76:1-2.)

**B.**      **The May 23, 2005 Incident**

Plaintiff felt she had been wrongly issued a citation, and she accordingly sought to challenge the twenty-five-dollar fine in court. (M. Dingle Dep. 82.)  She traveled to the district police station on May 23, 2005, and told defendant Maurice Scott, who was stationed at the front desk, that she wished to set up a date for a court appearance. (A. Dingle Dep. 19:9-22.)  Officer Scott responded by issuing an ultimatum to plaintiff: she could either immediately pay the fine listed on the citation, or she would be arrested. (M. Dingle Dep. 82:2-83:1.)  Plaintiff's mother, who had accompanied her to the station, tried at length to explain to the officers that the citation clearly stated that plaintiff could request a trial date without first paying the fine. (A. Dingle Dep. 21:6-12.)  Officer Scott rejected this overture and refused to give the citation form back to plaintiff. (*Id.*)

Five or six officers at the station, including Officers Scott and David Anderson, then huddled around plaintiff, handcuffs in hand, and said they were going to arrest her. (M. Dingle Dep. 85:6-86:2.)  One officer kept repeating that plaintiff was resisting arrest. (*Id.*)  Plaintiff and her mother felt that the officers were trying to intimidate them, and the officers physically restrained the movement of the pair, such that neither could leave the station. (A. Dingle Dep. 27-35.)  Neither plaintiff nor her mother raised her voice in response to the apparent intimidation tactics. (*Id.*)  Plaintiff ultimately stood up and removed her jewelry to facilitate the arrest. (M. Dingle Dep. 87:19-88:7.)  The officers then decided not to handcuff plaintiff, and instead they took her behind closed doors to perform a "livescan" procedure. (*Id.* 96:3-10.)  That procedure entailed scanning plaintiff's fingerprints and entering the data into the police computer system. (Anderson Dep. 26:3-11.)

II.     **ANALYSIS**

A.      **Standards for Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Affording substantial deference to the nonmoving party, the summary judgment standard mandates that the court "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true." *Brown v. Paulson*, 541 F. Supp. 2d 379, 383 (D.D.C. 2008).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

The nonmoving party must clear a certain threshold in surviving a motion for summary judgment: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," and "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the nonmoving party "must do more that simply show that there is some metaphysical doubt as to the material facts").

Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, the proper focus of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The judge's role at the summary judgment stage is limited. *See id.* at 249. As the Supreme Court in *Anderson* explained, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* Accordingly, the judge may not "assess the credibility of witnesses" at the summary judgment stage. *United States v. Project on Gov't Oversight*, 454 F.3d 306, 313 (D.C. Cir. 2006). Indeed, "[e]valuation of the credibility of witnesses must be left to the factfinder . . . ." *Id.*

## B.   <u>False Arrest</u>

Plaintiff first alleges that defendants falsely arrested her on both May 8[4] and May 23, and she accordingly raises claims of both constitutional and common-law false arrest. Defendants argue that Officer Moore had probable cause to detain plaintiff on May 8, and no actual arrest occurred on May 23. Alternatively, defendants contend that they are entitled to qualified immunity. The Court finds defendants' arguments unpersuasive.

### 1.   **Analysis of False Arrest Claims**

Common-law and constitutional claims of false arrest are generally analyzed as though they comprise a single cause of action. *See, e.g.*, *Scott v. District of Columbia*, 101 F.3d 748, 753-54 (D.C. Cir. 1996); *District of Columbia v. Minor*, 740 A.2d 523, 529 (D.C. 1999)

_____

[4]Unless otherwise noted, all dates are from the calendar year 2005.

(concluding that, if court finds viable constitutional claim of false arrest, then viable common-law claim naturally follows, and vice versa).  Indeed, "[t]he elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim."  *Id.* The analysis focuses on "'whether the arresting officer was justified in ordering the arrest of plaintiff,'" and if the question is answered affirmatively, the action fails.  *Id.* (quoting *Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977).  An officer can provide justification for the arrest if he can "demonstrate that (1) he . . . believed, in good faith, that his . . . conduct was lawful, and (2) this belief was reasonable."  *District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C. 1993).

In order to support a viable claim of false arrest, a plaintiff must allege that he was unlawfully detained.  *See Dent v. May Dep't Stores Co.*, 459 A.2d 1042, 1044 (D.C. 1982) ("The gist of any complaint for false arrest or false imprisonment is an unlawful detention.").  The concept of "arrest" is substantially malleable, and "[c]onfinement, no matter how brief, suffices to establish a prima facie case of false arrest."  *Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978); *see also Dent*, 459 A.2d at 1044 (defining "false arrest" as "[t]he unlawful detention of a person without a warrant or for any length of time . . . . ").  The plaintiff must produce evidence showing "a restraint against [his] will, as where [he] yields to force, to the threat of force or to the assertion of authority," *Faniel v. Chesapeake and Potomac Telephone Co. of Maryland*, 404 A.2d 147, 152 (D.C. 1979), and particularly salient factors in making such a showing include actual force, threats of force, or even mere words, *see Dent*, 459 A.2d at 1044. The "actions or words" highlighted by the plaintiff "must at least furnish a basis for a *reasonable* apprehension of present confinement."  *Dent*, 459 A.2d at 1044 (internal quotation marks omitted).

A plaintiff's "showing of detention without process raises a presumption of unlawful restraint and shifts to defendant the burden of justifying the restraint as lawful." *Marshall*, 391 A.2d at 1381 (finding viable false arrest claim after concluding plaintiff did not voluntarily accompany officers to police station where the officers failed to inform him that he had a right not to travel to the station).  Put more bluntly, "lack of legal authority or justification is not part of plaintiff's affirmative case." *Id.*  A court's power to make probable cause determinations is limited at the summary judgment stage, and the trial court should usually leave such questions for the jury's deliberation.  *See Murphy*, 631 A.2d at 37 (denying summary judgment where record did not exclude possibility that plaintiff had not been warned by police to vacate premises prior to arrest for unlawful entry); *Minor*, 740 A.2d at 529 (recognizing role of jury as "finder of facts upon which the probable cause determination is made").  As in other cases analyzed through the prism of summary judgment standards, courts may not permissibly assess the credibility of witnesses, even if some witnesses happen to be police officers.  *See Minor*, 740 A.2d at 531.

### a.      May 8 Incident

Defendants contend that Officer Moore had probable cause to arrest plaintiff on May 8, since plaintiff refused to obey his command to leave the premises.  (*See* Mot. Summ. J. 8.) Defendants argue that Officer Moore had authority under D.C. law to direct traffic and detain those who disobeyed his commands.. (*See id.*)  Specifically, defendants point to a section of D.C. traffic regulations that forbid an individual from "fail[ing] or refus[ing] to comply with any lawful order or direction of any police officer."  D.C. Mun. Regs. tit. 18, § 2000.2 (2008). Because there exists a genuine issue of material fact as to whether a reasonable officer could have thought plaintiff was in violation of this regulation, the Court finds summary judgment

improper.

Contrary to defendants' implicit assumption that the Court should unquestionably accept Officer Moore's deposition testimony as the unmitigated truth, the evidence must be assessed in the light most favorable to plaintiff.  *See Brown*, 541 F. Supp. 2d at 383.  Plaintiff's testimony compels the Court to conclude that Officer Moore did not have clear probable cause to make an arrest such that summary judgment is proper.  Though Officer Moore may have been acting under the color of D.C. law in commanding the group of girls to disperse, he did not give plaintiff a chance to leave the area before pouncing on her.  (*See* M. Dingle Dep. 54:22-55:2.) Even absent a reasonable amount of time to comply with Officer Moore's demands, the group of girls, including plaintiff, began immediately to walk away from the scene.  (*See, e.g.*, Goodbee Statement.)  Such conduct patently does not constitute "fail[ing] or refus[ing]" to comply with a lawful order such that the ordering officer would have possessed probable cause to detain plaintiff.  Though Officer Moore's testimony presents a different perspective on the altercation, the Court will leave it to the jury to ultimately determine which account merits acceptance.

### b.    May 23 Incident

Defendants contend that no actual arrest took place on May 23, and hence plaintiff can present no viable claim for false arrest.  (*See* Mot. Summ. J. 10-11.)  They argue that the only "detention," the livescanning of plaintiff, was submitted to voluntarily and does not present an actionable claim.  (*Id.*)  The Court disagrees with defendants' characterization of the incident and accordingly finds summary judgment inappropriate.

Confinement for any length of time can lead to an actionable claim of false arrest, and the parameters of detention are necessarily imprecise.  *See* discussion *supra* Part II.B.1.  Indeed, a

9

plaintiff can present a viable false arrest claim so long as her freedom of movement was restrained, whether by mere words, assertion of authority, threat of force, or actual force.  *See Dent*, 459 A.2d at 1044; discussion *supra* Part II.B.1.  Plaintiff here has presented sufficient evidence of restraint of movement, specifically testimony discussing officers' actions and assertion of authority.  At the police station, the officers informed plaintiff that she had to pay the fine associated with the citation or she would be summarily arrested.  (*See* M. Dingle Dep. 82:2-83:1.)  After she and her mother protested, five of six officers huddled around plaintiff, handcuffs in hand, and said they were going to arrest her.  (*Id.* 85:6-86:2.)  At least one officer repeatedly proclaimed that plaintiff was resisting arrest.  (*Id.*)  Surrounded by the officers and feeling intimidated, plaintiff and her mother believed they could not physically leave the police station.  (*See* A. Dingle Dep. 27-35.)  In sum, then, defendants' assertion of authority and use of words restricted the movement of plaintiff, thereby satisfying the definition of an actionable claim of false arrest.

Defendants attempt to escape this conclusion by arguing that plaintiff ultimately voluntarily accompanied officers to the back of the station to complete a livescan procedure, and this renders unviable plaintiff's claim.  (*See* Mot. Summ. J. 11.)  However, defendants do not allege that they informed plaintiff that accompaniment to the fingerprinting area was voluntary; to the contrary, plaintiff's other options were handcuffing and arrest or premature payment of the fine.  These events accordingly fall under the compass of *Marshall*, where that court found a viable false arrest claim after concluding the plaintiff did not voluntarily accompany officers to the police station, since they did not inform him that he could refuse without punishment.  391 A.2d at 1381.

10

2.      **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity with respect to both claims of false arrest.[5]  Construing the facts in favor of plaintiff's deposition testimony, the Court finds the officers' actions unreasonable and accordingly declines to extend to them immunity at the summary judgment stage.

Assessments of qualified immunity from constitutional torts and privilege from common-law torts may be combined into a single analysis.  *See Minor*, 740 A.2d at 531 (concluding that a claim of common-law privilege necessarily fails if a claim of qualified immunity fails).  Qualified immunity is generally provided to "government officials performing discretionary functions . . . so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  In the context of false arrest claims, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted).  However, qualified immunity must not operate to give officers carte blanche in detaining individuals, and relative novelty of circumstances with which they are confronted is no defense to an otherwise actionable claim of false arrest.  *See Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002).

In analyzing claims of qualified immunity, the first question is "taken in the light most

---

[5]Defendants' qualified immunity argument with respect to the May 23 incident essentially repeats their previous contention that there was no actual "arrest" to give rise to a false arrest claim, and it incorporates the argument that no actual assault or battery occurred.  (*See* Mot. Summ. J. 9, 13-14.)  Because the Court already rejected the first contention, *see* discussion *supra* Part II.B.1.b, and addresses the second argument in a later section, *see* discussion *infra* Part II.C, it confines the qualified immunity analysis to the May 8 incident.

favorable to the party asserting the injury, [whether] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If that question is answered affirmatively, the next step is to determine whether that right was clearly established at the time in question. *Id.* Relevant to the second part of the determination, even "general statements of the law are not inherently incapable of giving fair and clear warning" as to what constitutes deprivation of a constitutional right. *Hope*, 536 U.S. at 740.

Applying the two-part analysis to this action, it appears from this record that Officer Moore violated a clearly established right. As discussed previously, the facts alleged by plaintiff show that Officer Moore violated a constitutional right in falsely detaining plaintiff. *See* discussion *supra* Part II.B.1.a. Moreover, the right was clearly established at the time of the incident in question. Prior to May 8, panoplied courts had held that detention without ample justification gives rise to a false arrest claim. *See* discussion *supra* Part II.B.1. Evaluated in a light favorable to plaintiff, Officer Moore had no basis to detain her, since she and her friends were complying with his demands by moving away from the scene. (*See* Goodbee Statement.) Hence, plaintiff was not in violation of the D.C. regulation prohibiting individuals from failing or refusing to comply with directions issued by officers. Absent probable cause that an individual has likely committed a crime or otherwise violated a statute, detention cannot be justified. Accepting - as the Court must at this stage of the proceedings - plaintiff's version of the facts, Officer Moore is not entitled to qualified immunity, because he points to no other statute that authorized his detention of plaintiff.

### C.   Assault and Battery

Defendants next argue that they are entitled to summary judgment as to plaintiff's assault and battery claims stemming from the May 23 incident.  They claim the record fails to show evidence of an actionable claim.  Though the Court finds that plaintiff presents a viable assault claim, it agrees with defendant that the battery claim should be dismissed.

Assault and battery are distinct causes of action.  *See Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1980).  Battery involves "an intentional act that causes a harmful or offensive bodily contact."  *Id.*  In view of the centrality of offensive touching to the tort of battery, summary judgment is appropriate where the plaintiff fails to allege she was offensively touched during the course of an arrest.  *See id.*

Claims for assault must involve "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim."  *Etheridge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993).  To be liable for assault, the defendant must have intended "to cause in the plaintiff an apprehension of a battery."  *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000).  In the context of an arrest, "unless the threatened use of force is clearly excessive, an officer is protected against liability for assault."  *Jackson*, 412 A.2d at 956.  However, use of the "clearly excessive" standard is appropriate only where the arrest was lawfully made.  *See Beran v. United States*, No. 88-0603, 1992 WL 182261 at *8 (D.D.C. July 12, 1992).

In view of the preceding analysis, plaintiff clearly fails to state a viable claim for battery. Plaintiff in her deposition failed to testify that she was touched, offensively or otherwise, by officers during the May 23 incident.  (*See* M. Dingle Dep. 92:2, 96:3-4, 105:1-4.)  Since an allegation of offensive touching is the sine qua non of a battery claim, *see Jackson*, 412 A.2d at

955, plaintiff's battery claim necessarily fails.

Plaintiff does, however, provide sufficient evidence to support her claim for assault such that a reasonable jury could find in her favor.  As she and her mother testified, five or six officers huddled around plaintiff at the police station, the two women felt restrained and unable to exit the premises, and officers repeatedly called to arrest plaintiff and insisted she was resisting arrest. *See* discussion *supra* Part I.B.  A reasonable jury could find that the officers' actions were intended to "cause in the plaintiff an apprehension of a battery," *see Sabir*, 755 A.2d at 452, in order to force her into compliance with their demands.  Moreover, contrary to defendants' contentions, plaintiff does not have to show that the threat of force was "clearly excessive," since the initial detainment was unlawful, *see* discussion *supra* Part II.B.1.b.

### D.     District of Columbia Liability

The District of Columbia argues that it cannot be held liable under the theory of respondeat superior for torts committed by its employees.  The Court agrees that the District cannot be held liable for constitutional torts committed by employees[6], but it finds liability for common-law torts may be imposed on the District under the theory of respondeat superior.

The U.S. Supreme Court unequivocally stated that "a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).  In this action, then, the District may not be held liable for plaintiff's constitutional claims of false arrest.

Conversely, "[u]nder the doctrine of respondeat superior the District of Columbia is liable

---

[6]Plaintiff concedes that the District cannot be held liable for constitutional torts committed by its employees.  (*See* Opp. 12.)

for the torts of its police officers acting under the scope of their employment." *District of Columbia v. White*, 442 A.2d 159, 162 n.7 (D.C. 1982); *accord District of Columbia v. Davis*, 386 A.2d 1195, 1202 (D.C. 1978). In view of this precedent, the District may be held liable for plaintiff's claims of common-law false arrest and assault and battery.

### E.      Gross Negligence

Defendants further contend that plaintiff may not allege claims of both assault and battery and gross negligence, since there can be no such thing as a negligent intentional tort. The Court disagrees with defendants' characterization of applicable precedent.

A plaintiff may properly argue alternative and inconsistent theories of liability to the jury, provided he does not collect damages on both claims. *See Scott*, 101 F.3d at 758. Though a plaintiff may not combine negligence and intentional torts into a single cause of action, claims may appropriately reach the finder of fact so long as each is presented individually. *See Sabir*, 755 A.2d at 452-53. Here, plaintiff has alleged assault and battery in a single count and gross negligence is a distinctly separate count. As such, plaintiff may continue to allege both of these inconsistent theories so long as she does not recover damages on both claims.

### F.      Punitive Damages

Defendants finally contend that plaintiff may not appropriately seek punitive damages, since she has not pointed to any facts which indicate outrageous conduct on the part of any defendants. The Court concludes that plaintiff may seek punitive damages against only Officer Moore.

Punitive damages may not be imposed against the District of Columbia "absent a statute explicitly authorizing it," *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975), *accord*

15

*Daskalea v. District of Columbia*, 227 F.3d 433, 446-47 (D.C. Cir. 2000), and such a statute is

not at issue here.  However, individual officers may be liable for punitive damages if they

commit a "tortious act accompanied with fraud, ill will, recklessness, oppressiveness, willful

disregard of the plaintiff's right, or other circumstances tending to aggravate the injury." *Butera*

*v. District of Columbia*, 235 F.3d 637, 657 (D.C. Cir. 2001) (internal quotation marks omitted).

In other words, defendant's conduct must have been "outrageous, grossly fraudulent, or reckless

toward the safety of the plaintiff." *District of Columbia v. Jackson*, 810 A.2d 388, 396 (D.C.

2002).  Ultimately, to recover punitive damages, plaintiff must "prove, by a preponderance of the

evidence, that the officers committed a tortious act, and by clear and convincing evidence that the

act was accompanied by conduct and a state of mind evincing malice or its equivalent." *Butera*,

235 F.3d at 657 (internal quotation marks omitted).  "A jury may infer the requisite state of mind

from the surrounding circumstances." *Id.* (internal quotation marks omitted).

　　　　Here, the Court may not permissibly conclude, as a matter of law, that Officer Moore's

actions were not sufficiently outrageous to warrant imposition of punitive damages.  Indeed, a

reasonable jury could find that Officer Moore's actions were so outrageous as to merit an award

of punitive damages.  Taking the facts as alleged by plaintiff, Officer Moore approached the

group of girls and told them to leave the area.  *See* discussion *supra* Part I.A.  Plaintiff, along

with the other girls, began to walk away, but Officer Moore nevertheless used physical force

against plaintiff.  *Id.*  In the ensuing attack, Officer Moore forcefully grabbed plaintiff, slammed

her body on top of a car, grabbed her hair and slammed her head on top of a car, searched her,

and detained her in the back of a patrol car.  *Id.*  At no point during this brutal display of

purported authority did plaintiff resist.  *Id.*  A reasonable jury could deem such conduct

16

outrageous even if plaintiff was violating a traffic regulation, but her contention that she was not in violation of the regulation buttresses the potential conclusion that punitive damages are warranted.  At the summary judgment stage, then, it would be imprudent for the Court to declare as a matter of law that Officer Moore's actions were not outrageous.

Though plaintiff's account of her altercation with Officer Moore is itself sufficient to allow the preceding punitive damages claim to reach the jury, she has not offered adequate evidence to provide a basis for a punitive damage award against the other individual defendants. Plaintiff relies principally on conclusory assertions that the officers on May 23 acted outrageously and in reckless disregard of her wellbeing.  (*See* Opp. 13-14.)  Such statements fail to satisfy the burden plaintiff bears in establishing an entitlement to punitive damages, as they do not provide a basis for a jury to find "by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent." *Butera*, 235 F.3d at 657 (internal quotation marks omitted).  Therefore, the punitive damages claims against Officers David Anderson and Maurice Scott must be dismissed.

III.    **CONCLUSION**

For the foregoing reasons, the Court concludes that defendants' Motion for Partial Summary Judgment will be GRANTED as to battery claims stemming from the May 23 incident, constitutional false arrest claims against the District of Columbia, and punitive damages claims against the District of Columbia and Officers David Anderson and Maurice Scott and DENIED as to all other claims.  Moreover, all claims against defendants Brian Anderson and James Anderson were voluntarily dismissed (*see* Docket Entry # 30), by plaintiff on December 6, 2006,

17

and all claims against defendants Stuart Emerman and Nancy Oliver were voluntarily dismissed by plaintiff in her opposition memorandum (Docket Entry # 48 at 2).

The following claims remain to be tried: (1) constitutional claim of false arrest against Officer Moore stemming from the May 8 incident; (2) constitutional claim of false arrest against Officers Scott and David Anderson stemming from the May 23 incident; (3) common-law claim of false arrest against Officer Moore and the District of Columbia stemming from the May 8 incident; (4) common-law claim of false arrest against Officers Scott and David Anderson and the District of Columbia stemming from the May 23 incident; (5) assault and battery claim against Officer Moore and the District of Columbia stemming from the May 8 incident; (6) assault claim against Officers Scott and David Anderson and the District of Columbia stemming from the May 23 incident; (7) gross negligence claims against all remaining defendants; and (8) punitive damages claim against Officer Moore.

A separate order shall issue this date.


Signed by Chief Judge Royce C. Lamberth, on August 12, 2008.